Michael E. Haglund, OSB No. 77203
Michael K. Kelley, OSB No. 85378
Michael G. Neff, OSB No. 92536
Julie A. Weis, OSB No. 97432
E-mail: mhaglund@hk-law.com
HAGLUND, KELLEY, HORNGREN, JONES & WILDER LLP
101 S.W. Main Street, Suite 1800
Portland, Oregon 97204-3226
Phone: (503) 225-0777
Facsimile: (503) 225-1257

        Attorneys for Plaintiffs


## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

CV 05 - 465

| | | |
|---|---|---|
| **EAST PORTLAND IMAGING CENTER, P.C.**, an Oregon professional corporation doing business as **EPIC IMAGING-EAST**; and **BODY IMAGING, P.C.**, an Oregon professional corporation doing business as **BODY IMAGING RADIOLOGY**,<br><br>        Plaintiffs,<br><br>        v.<br><br>**PROVIDENCE HEALTH SYSTEM-OREGON**, an Oregon nonprofit corporation; **PROVIDENCE HEALTH PLAN**, an Oregon nonprofit corporation; **PORTLAND MEDICAL IMAGING, LLC**, an Oregon limited liability company; **RADIOLOGY SPECIALISTS OF THE NORTHWEST, P.C.**, a professional corporation; **CENTER FOR MEDICAL IMAGING, LLC**, an Oregon limited liability company; and **ADVANCED MEDICAL IMAGING, LLC**, an Oregon limited liability company,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No.<br><br>**COMPLAINT**<br><br>By Plaintiffs |

Page 1 -    **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

## INTRODUCTION

This action seeks to stop the illegal advance of a vertically integrated hospital/health insurance/medical services combination that poses an immediate threat to monopolize the market for radiology and imaging services in Portland, Oregon. Without the intervention of the federal courts to enforce this nation's antitrust laws by preserving free and fair competition, the plaintiff imaging services firms and their participating radiologists will be excluded from the opportunity to compete for physician referrals from approximately 40% of the market, patient choice will be limited and the quality of patient care will suffer.

If the powerful but illegal combination assembled by Providence Health System-Oregon and its health insurance and medical services affiliates is allowed to proceed as planned, there is the dangerous probability of a monopoly in the market for radiology and imaging services in Portland with the following negative consequences:

- The pace of market-driven innovation in the field of radiology and imaging services in Portland will be slowed;

- Physician access to important diagnostic tools and expert radiologists will be reduced;

- The quality of the patient care available to a significant share of the Portland community will be undermined; and

- The cost of radiology and imaging services in Portland will increase faster

Page 2 -  **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

than would otherwise occur in a freely competitive market.

Providence Health System-Oregon (hereafter Providence) is aggressively pursuing a business model designed to secure and preserve monopoly power in as many health care product markets in Portland as possible.  This is being accomplished through a three-legged consolidation of medical services providers – hospitals, outpatient facilities and employed or contracted physicians – that is integrated with the primary payors of these services – Medicare, Medicaid and health care insurance providers. Providence operates its own affiliate health insurance company that both sells health insurance products and credentials and rents primary care and speciality physician panels to more than 100 insurance companies serving employers in the Portland market.

Historically, the credentialing of physicians has been based upon professional competence.  Providence, however, is now engaged in blatant economic credentialing of its physician panels for the purpose of advancing its wrongful market consolidation objectives.  This is now occurring on two fronts.

First, Providence is excluding medical service providers considered competitive threats in those markets where Providence either has or believes it has the power to steer all of the Providence-controlled medical services in that market to its own captive facilities.  For example, after decades of service that Providence acknowledges was of superior quality, the plaintiff radiology and imaging firms were given notice on February 1 that effective May 1, 2005, both are terminated without cause as

Page 3 -  **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

authorized providers of their specialized medical services to Providence provider panels. This action is being taken without any justification other than purported economic and consolidation benefits to Providence. Unless enjoined by this Court before May 1, 2005, all Providence-controlled radiology and imaging referrals must be steered to Providence facilities on and after that date, an action that will undermine physician diagnostic choice and patient care in the Portland area.

Second, where it fits with the monopolistic business model being pursued, Providence will threaten physicians wishing to withdraw from its provider panels with new Providence-owned competition in their specialties unless the physicians agree to remain on the Providence panels. Further, Providence requires these physicians to accept a variety of restrictions on the range of medical services which they can provide to their patients.

In addition to restructuring its medical provider panels based primarily upon its own economic interests rather than competency and patient care criteria, Providence is systematically engaging in the following exclusionary tactics designed to hinder its competition while consolidating market power in its own hands:

1. Illegally tying acute care pricing in Providence hospitals to an insurance company's willingness to require its plan participants to utilize Providence-controlled radiology and imaging services;

2. Refusing to provide the plaintiff radiology and imaging firms with electronic access to Providence hospital emergency rooms for the purpose of speedily transmitting images in emergency situations despite the obvious

Page 4 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

inconsistency with what should be the fundamental interest of all medical providers in the best medical interests of the patient;

3.   Refusing the requests of the plaintiff firms and multiple independent physicians with privileges at Providence hospitals that electronic access be provided to the plaintiff firms' PACS (Pictorial Archived Communication System) for the purpose of efficiently accessing patient records while physicians are on rounds at Providence hospitals;

4.   Deinstalling an electronic link between a Providence-controlled outpatient facility and one of the plaintiff imaging firms that facilitated the electronic transfer of radiology reports into the electronic medical records of patients at that facility and refusing to provide such access to other Providence-controlled outpatient facilities, all for the purpose of hindering competition despite the negative impacts on the quality of care provided to individual patients;

5.   Threatening employed primary care physicians with loss of income in the form of reduced bonus compensation unless their referral patterns changed to prefer Providence radiology and imaging facilities despite significant differences between the quality and service of Providence radiology and imaging services and those of the plaintiff firms;

6.   Threatening personnel in Providence outpatient facilities with the loss of their jobs (and in fact carrying out those threats in at least two instances) unless the personnel ceased making patient referrals to the plaintiff firms despite the existence of sound medical reasons for those referrals; and

7.   Engaging in a broad array of unethical anticompetitive tactics including the following:

Page 5 -   **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

- Communicating false information to patients and doctors regarding their radiology and imaging services options;

- Falsely advertising its Medicare supplement insurance products as allowing insureds to choose any Medicare-approved physician when in fact many such physicians were excluded from Providence provider panels solely for economic reasons;

- Using multiple tactics inconsistent with the best medical interests of patients to disrupt or slow the insurance authorizations for radiology or imaging referrals to the plaintiff firms; and

- Confiscating and destroying referral pads from the plaintiff firms at Providence-controlled outpatient facilities in order to reduce referrals to plaintiffs.

The above introduction is provided for overview purposes; particularized allegations supporting five federal antitrust claims and one business tort claim under Oregon law are set out below.  Contemporaneous with the filing of this complaint, plaintiffs seek prompt injunctive relief to protect patient care by ensuring access to state-of-the-art diagnostic tools and to maintain the competitive status quo in the Portland market for radiology and imaging services by enjoining the proposed exclusion of plaintiffs from a substantial share of that market and by requiring Providence to cease certain especially egregious exclusionary practices that undermine patient care in Portland, Oregon and will cause substantial and irreparable harm both to plaintiffs and to consumers of radiology and imaging services.

Page 6 -   **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

## JURISDICTION AND VENUE

1.    This action is brought under Sections 4 and 16 of the Clayton Act, as amended (15 U.S.C. §§ 15(a) and 26), alleging violations of Sections 1 and 2 of the Sherman Act, as amended (15 U.S.C. §§ 1 and 2).  This Court has jurisdiction over the action pursuant to 28 U.S.C §§ 1331 and 1337.

2.    Venue in this District is proper under Sections 4 and 12 of the Clayton Act, as amended (15 U.S.C. §§ 15(b) and 22). Plaintiffs reside, are found in and transact, and have transacted, substantial business in the District of Oregon.  Defendants are found in and transact, and have transacted, substantial business in the District of Oregon.

3.    This Court has supplemental jurisdiction of plaintiffs' state law claims under 28 U.S.C. § 1441(c).

## PARTIES

4.    Plaintiff East Portland Imaging Center, P.C. is an Oregon professional corporation doing business as EPIC Imaging-East with its principal place of business at 233 NE 102nd Avenue, Portland, Oregon.  EPIC Imaging-East and its predecessors have provided state-of-the-art radiology and imaging services in Portland for over 40 years.

5.    Plaintiff Body Imaging, P.C. is an Oregon professional corporation doing business as Body Imaging Radiology with its principal place of business at 1500 NW Bethany Blvd., Beaverton, Oregon.  Body Imaging has provided radiology and imaging services in Portland since 1978.

Page 7 –   **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

6. Defendant Providence Health System-Oregon is an Oregon nonprofit corporation with its principal place of business at 9205 SW Barnes Road, Portland, Oregon. Providence Health System-Oregon is a health care system composed of seven hospitals and numerous medical clinics and facilities, including three Portland area hospitals: Providence Portland Medical Center; Providence St. Vincent Medical Center; and Providence Milwaukie Hospital.

7. Providence Health Plan is an Oregon nonprofit corporation with its principal place of business at 3601 SW Murray Blvd., Beaverton, Oregon. Providence Health Plan is engaged in the business of providing health insurance through direct sales of its own insurance products to the public or through the rental of preferred medical provider panels to other insurance companies.

8. Defendants Providence Health System-Oregon (Providence) and Providence Health Plan are collectively referred to in this Complaint as the "Providence defendants."

9. Defendant Portland Medical Imaging, LLC is a partnership composed of defendants Providence Health System-Oregon and Radiology Specialists of the Northwest, P.C., which has announced the opening of a radiology and imaging center at 10538 SE Washington Street, Portland, Oregon in April, 2005.

10. Defendant Center for Medical Imaging, LLC is an Oregon limited liability company owned and operated by defendants Providence Health System-Oregon and Advanced Medical Imaging, LLC, which has announced that it will open a radiology and imaging center in the Aloha area in August, 2005.

Page 8 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

11.   Upon information and belief, Providence is a 50% partner and owner in the defendant joint venture radiology and imaging centers on the east and west sides of Portland. Hereafter, defendants Portland Medical Imaging, LLC, Radiology Specialists of the Northwest, P.C., Center for Medical Imaging, LLC, and Advanced Medical Imaging, LLC will be referred to as the "Co-Conspirator defendants."

## PROVIDENCE AND ITS MONOPOLISTIC BUSINESS MODEL

12.   Providence operates 17 hospitals and provides a broad array of outpatient services through an extensive network of clinics and employed physicians in the states of Oregon, Washington, Alaska and California.  In Oregon, Providence is the only hospital system in the state to operate its own insurance division, defendant Providence Health Plan, which through its own insurance products and rented provider panels insures more than 600,000 individuals in Oregon.

13.   The vertically integrated health care operation of the Providence Defendants has a substantial effect on interstate commerce through the purchase or sale of goods and services in interstate commerce, including acute care hospital services, outpatient services including radiology and imaging services, durable medical supplies and equipment, health care insurance and pharmaceuticals.  The unlawful acts alleged in this Complaint involve, affect and occur in the flow of interstate commerce.

14.   Providence operates what is by far the largest hospital/outpatient clinic system in the Portland market, which

Page 9 -  **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

includes three hospitals and 25 clinics and other outpatient facilities.

15. In the Portland tri-county area, Providence hospitals account for 39% of the gross revenues earned by Portland area hospitals. The dominance of the Providence system is further demonstrated by its share of reported outpatient visits to Portland area hospitals in the tri-county area, which constitutes 50% of all outpatient visits based upon data provided to the Office for Oregon Health Policy and Research, a state agency.

16. Over the last five years, Providence has been aggressively pursuing a business model based upon vertical integration and consolidation of health care markets. This business model incorporates continued expansion of the Providence acute care hospitals and network of outpatient facilities with the use of exclusionary contracting practices to grow its insurance division.

17. On its website, Providence proudly notes that it was ranked fourth nationally in a recent survey of the "top 100 integrated health networks." Among the top executives leading the Providence Defendants' drive for consolidation in Portland area medical markets are personnel hired from Intermountain Health Care, a large integrated health system in Utah that is now the subject of considerable criticism for amassing too much market power in Utah. For example, the Utah state legislature recently passed a bill establishing a 15-member task force that will consider the market penetration and exclusionary contracting practices of Intermountain Health Care as well as the advisability

Page 10 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

of requiring that Intermountain divest itself of its insurance division.  This legislature was signed into law on March 18, 2005.

18.  Within the Portland market, Providence is reportedly pursuing the acquisition of both Tuality Hospital in Washington County, and Willamette Falls Hospital in Clackamas County.  In addition, Providence has recently acquired approximately 20 acres in eastern Multnomah County for the planned construction of new hospital and outpatient facilities.

## RELEVANT PRODUCT AND GEOGRAPHIC MARKET

19.  Outpatient radiology and imaging services are an economically distinct relevant service market within the health care industry. The relevant geographic market is the Portland tri-county area consisting of Multnomah, Clackamas, and Washington counties.

20.  Based upon an examination of the reasonably available public data, Providence currently holds a 34-39% share of the Portland market for outpatient radiology and imaging services.  If Providence is allowed to foreclose such a substantial share of the market for radiology and imaging services from competition by excluding plaintiffs from access to physician referrals within Providence-controlled insurance plans or rented provider panels and to proceed with ongoing efforts to acquire or build additional hospital and outpatient facilities, there is a substantial likelihood that Providence will secure monopoly power in the Portland market for outpatient radiology and imaging services with a market share in excess of 50%.

Page 11 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

21.   Barriers to entry by new competitors in the market
for radiology and imaging services in Portland are high.  These
barriers include heavy investment costs, the dominant and growing
presence of the Providence Defendants in the market and their
reputation for aggressive action against competitors and the
lockup of segments of the market through physician alignment and
through insurance products, including those of the Providence
Defendants and others.

### PROVIDENCE' ANTICOMPETITIVE ACTIONS AGAINST PLAINTIFFS

22.   Prior to 2001, plaintiffs were longstanding members
of Providence provider panels without incident or complaint.  In
the case of EPIC Imaging-East, that history dates back to 1982 and
for Body Imaging, the history of service to the Providence health
care network dates back to 1989.

23.   Plaintiffs have a long history of making
substantial investments to provide up-to-date and innovative
radiology and imaging services to plaintiffs in the Portland area.
Most recently, and by way of example only, in late 1999, EPIC
Imaging-East invested more than $2 million in bringing the first
PET scanner to the Portland area.  Following the installation,
EPIC Imaging-East undertook to familiarize attending physicians at
Providence hospitals with the appropriate utilization and
interpretation of PET images.

24.   Providence subsequently contracted to have a mobile
PET scanner placed in one of its parking lots at Providence
Portland Medical Center.  In 2001, Providence modified the medical
services agreement between its health plans and EPIC Imaging East

Page 12 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

to exclude any reimbursement for PET scans.  When an affiliate of EPIC Imaging-East (EPIC Imaging-West) opened on Portland's SW Nimbus Avenue in June, 2000, Providence interpreted the existing contract between the parties to allow reimbursement for radiology and imaging services provided <u>only</u> at EPIC Imaging-East's 102nd Avenue address, solely for the purpose of eliminating potential competition with EPIC Imaging West.

25.   In 2001, Providence eliminated participation by Body Imaging in its Providence Health Plan provider panels, but continued to allow Body Imaging to accept referrals of Medicare and Medicaid participants covered by the Providence Health Plan.

26.   In 2003, Providence served notice to Body Imaging that it was being eliminated from all participation in Providence provider panels, including those of Providence Health Plan and those rented to more than 100 insurance companies.  Body Imaging protested this decision and Providence subsequently agreed to allow continued participation by Body Imaging in the preferred panels rented to other insurance companies "for the foreseeable future," but maintained the exclusion from participation in providing services to Providence Health Plan members.

27.   On February 1, 2005, Providence forwarded a notice to plaintiffs terminating all agreements for all lines of business under medical services agreements with EPIC Imaging-East and Body Imaging effective May 1, 2005.  The notice, a copy of which is attached as Exhibit A, notes that the plaintiff firms "provided excellent patient care over the years" and that Providence "valued" its business relationship with the plaintiff

Page 13 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

firms, but offers the following as the purported rationale for the decision:

> Now that Providence Health System's own imaging facilities have expanded and can more than adequately handle patient capacity throughout the Portland area, we have determined that it is in the best interest of our customers to consolidate these services in Portland through the PHS facilities. As health care costs continue to escalate, consolidation of imaging services is one means by which to achieve affordability and efficiencies for our patients into the future.

28.    Notice of the termination of all agreements for all lines of business between the Providence defendants and plaintiffs was mailed during the first week of February, 2005 to thousands of Portland area physicians, Providence Health Plan members and the more than 100 insurance companies renting Providence provider panels, also known as "Providence Preferred Payors."

29.    The February notices to plaintiffs and to Providence Health Plan members do not mention the fact that Providence and the Co-Conspirator defendants in this action were pursuing the opening of two new joint venture radiology and imaging centers in relatively close proximity to plaintiffs' operations on east and west side of Portland.  The February notice to Portland area physicians referenced and enclosed a list of "Portland area Providence preferred participating imaging facilities" that contained the defendant joint ventures between Providence and the Co-Conspirator defendants.

30.    The February notices, despite referencing the importance of achieving "affordability and efficiencies" through consolidation, failed to give any indication to Portland's medical

Page 14 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

community of what Providence would later announce on February 23, 2005 as a 5.7% increase in radiology and imaging reimbursement rates for the Providence system in Portland effective May 1, 2005. A copy of the February 23 notice is attached as Exhibit B.

31.    The recent history of price increases within the Providence system for the conversion factor utilized in paying Providence and its authorized providers of all commercially insured radiology and imaging services is set out below:

| Year | Conversion Factor | Effective Date | % Rate Increase |
|------|-------------------|----------------|-----------------|
| 2003 | $56.00 | 1/1/2003 | 1.8% |
| 2004 | $56.00 | | 0.0% |
| 2005 | $58.65 | 1/1/2005 | 4.7% |
| 2005 | $62.00 | 5/1/2005 | 5.7% |

32.    In the medical services agreements that Providence is terminating as of May 1, 2005 with the plaintiff imaging firms, the term "credentialing" is defined as follows:

> "Credentialing" is the process by which practitioners or providers are determined eligible to participate in Health Plan contracts. Eligibility is determined by the extent to which Participating Practitioner or Participating Provider meets defined requirements for education, licensure, professional standing, service availability and accessibility, and medical and quality management requirements. (emphasis added)

33.    Providence acknowledges that neither EPIC Imaging-East nor Body Imaging are being terminated as authorized providers eligible to participate in Providence Health Plan contracts for any of the reasons that would justify a loss of credentialing according to the above criteria. Instead, the effort by the Providence Defendants to exclude plaintiffs from access to

Page 15 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

Portland area physician referrals for radiology and imaging services is based purely on economic considerations and the desire by Providence to consolidate and ultimately monopolize those services within its own system.

34. Beyond blatant economic credentialing of its medical provider panels, Providence has and continues to pursue a course of conduct calculated to acquire monopoly power in the Portland market for radiology and imaging services. This course of conduct has included the predatory or exclusionary practices described below:

    a.    Illegally tying acute care pricing in Portland area Providence hospitals to an insurance company's willingness to require its plan participants to utilize Providence-controlled or contracted radiology and imaging services;

    b.    Refusing to provide the plaintiff radiology and imaging firms with electronic access to Providence hospital emergency rooms for the purpose of speedily transmitting images in emergency situations despite the obvious inconsistency with the best medical interests of patients requiring emergency care and the publicly announced mission of Providence;

    c.    Refusing the requests of the plaintiff firms and multiple independent physicians with privileges at Providence hospitals that electronic access be provided to the plaintiff firms' PACS system (Pictorial Archived Communication System) for the purpose of efficiently accessing patient records while physicians are on rounds at Providence hospitals;

    d.    Deinstalling an electronic link between a Providence outpatient clinic and EPIC Imaging-East that facilitated the electronic transfer of radiology reports into the electronic medical records of

Page 16 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

patients at that facility and refusing to
provide such access to other Providence
outpatient facilities, despite the
obvious inefficiency when radiology
reports from the plaintiff firms, rather
than being transmitted electronically,
must be delivered in paper form and then
scanned by Providence personnel into
patients' electronic medical records;

e.    Falsely advertising its Medicare
supplement insurance product as allowing
a prospective insured to "choose any
Medicare-approved physician" when in fact
Providence excluded multiple radiologists
including Body Imaging from its Medicare
supplement insurance product;

f.    Threatening or coercing its more than 200
employed primary care physicians in the
Portland market with loss of income in
the form of reduced bonus compensation
unless their referral patterns changed to
prefer Providence radiology and imaging
facilities despite known significant
differences in quality and service
between Providence radiology and imaging
centers and those of the plaintiff firms;

g.    Threatening personnel in Providence
outpatient clinics with the loss of their
jobs (and in fact carrying out those
threats in at least two instances) unless
the personnel ceased making patient
referrals to the plaintiff firms despite
the existence of sound medical reasons
for those referrals.

35.    If Providence is allowed to continue its

anticompetitive and predatory practices and to implement its

exclusive dealing arrangements with the Co-Conspirator defendants,

both of the plaintiff firms will be severely damaged by losing 40%

or more of their annual patient referrals.  This will occur not

because of competition based upon quality, service and price, but

as a result of the Providence defendants' exclusionary contracting

and other predatory practices.

Page 17 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

36.    Further, if Providence successfully pursues its known acquisition targets and expansion plans by adding up to three additional hospitals and multiple additional outpatient facilities in the Portland market, plaintiffs face significant risk of being forced out of business entirely, thereby reducing competition in the relevant market.

37.    Since its exclusion from Providence Health Plan insurance provider panels in 2003, Body Imaging has suffered and continues to suffer damage of approximately $1 million annually.

38.    If the exclusive dealing arrangement between the Providence defendants and the Co-Conspirator defendants is not enjoined and the plaintiff firms allowed to continue to compete for physician radiology and imaging referrals within the Providence-controlled segment of the Portland market, plaintiffs will suffer an estimated 40% decline in patient referrals.  This loss of business, unless injunctive relief maintains the competitive status quo following May 1, 2005, will inflict combined monthly damages of $1.0 million on plaintiffs.

### HARM TO COMPETITION AND CONSUMERS

39.    Unless enjoined on or before May 1, 2005, the exclusion of the plaintiff firms from the Providence-controlled share of the Portland market for imaged radiology and imaging services will have significant adverse consequences on competition and consumers.  These include reduced levels of market-driven innovation in the field of radiology and imaging services in Portland, significantly reduced physician and patient access to diagnostic imaging tools and higher prices.

Page 18 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

40.  Plaintiffs have well earned reputations for innovation, quality and price leadership in the Portland market for state-of-the-art radiology and imaging services.  EPIC Imaging-East, for example, installed one of the first MRI scanners in the Pacific Northwest, well over a year before this technology was available in any Portland area hospital.  EPIC Imaging-East was also the first in Portland to offer digital mammography, Positron Emission Tomography or PET scanning, both of which were introduced in 2000.  And again in 2003, EPIC Imaging-East was the first in the Portland medical community to install a PET/CT scanner at an approximate cost of $2.6 million.

41.  Body Imaging Radiology is the only outpatient imaging center providing anesthesia services in connection with radiology and imaging, which are necessary for pediatric MR/CT patients and adults with severe claustrophobia problems.

42.  Radiologists at the plaintiff imaging firms are respected in the community for the high quality of their reports interpreting imaging performed at their facilities and for their specialized expertise in diagnosing unusual presentations of disease or in identifying anatomical abnormalities which may show up on the images.  Many of the most expert physicians in the Providence system have acknowledged the leadership and capability of plaintiffs.  For example, in a letter dated November 28, 2000 to all Providence Portland Medical Center physicians attached as Exhibit C, Dr. Kim Wayson, president of the Providence Portland Medical Center Professional Staff noted the following:

Page 19 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

Everybody perceives that the Radiology
Department at Providence Portland is at a
disadvantage having to compete against the
"gold standard" in the community – East
Portland Imaging.

43.  In stark contrast, the same letter goes on to list

the results of an evaluation process regarding the functioning of

the Providence Radiology Department and notes "several areas that

stood out as <u>major sources of dissatisfaction</u>," including:

The concept of service.

There appears to be a wide-spread perception of
variability of quality of the radiologists and
their competency to interpret exams.

There is a significant issue in terms of
convenience in attempting to find films and to be
able to access radiologists.

44.  The competitive situation has not changed

materially since late 2000.  The plaintiff firms continue to

provide price leadership and superior quality both in terms of

image interpretation and service compared to the much larger and

more bureaucratic Providence system.

45.  Since the issuance of the early February 2005

letters by the Providence Defendants to Portland area physicians,

many of them have written the Providence defendants urging a

change of heart because the May 1, 2005 exclusion of plaintiffs

from Providence-controlled insurance and rented provider panels

will substantially reduce the range of diagnostic tools available

to these physicians for a significant share of their patient base

and will negatively impact individual patient care.

46.  Attached as Exhibits D through G are copies of some

of the letters written by Portland area physicians urging the

Page 20 – **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

Providence defendants to reconsider their decision.  In their letters, these doctors emphasize the importance of reversing the Providence exclusion of the plaintiff firms in order to maintain existing levels of quality imaging service and patient care in the Portland area.

47.    In a letter dated February 7, 2005 attached as Exhibit D, vascular surgeon Dr. Kenneth A. Janoff notes that he is very concerned about the decision and hopes that Providence will give some consideration to the fact that his practice at Mt. Hood General and Vascular Surgeons has had "numerous problems trying to get proper studies done at the Providence Hospital facilities." Particularly telling is the following excerpt from Dr. Janoff's letter:

> Over and over again the studies were not being performed correctly and I would talk to Stacy or Jim Waskey [of Providence], and Jim finally told me that I should have the studies done at EPIC because his people couldn't seem to get these studies done properly.  When the studies aren't done properly and have to be redone there's great risk to the patient because they involve a lot of contrast which can be nephrotoxic as well as the wasted time and energy, and often times transportation can be a problem with these elderly patients.

48.    Women's health issues, in particular, will be negatively impacted by the exclusion of the plaintiff firms from access to the physician referrals of patients insured by Providence-controlled health plans or rented provider panels.  Dr. Amy Thurmond, one of the radiologists on staff at EPIC Imaging-

Page 21 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEHc14669.wpd

East, is recognized in Portland and throughout the U.S. as one of this country's premier gynecological radiologists.  The March 3, 2005 letter attached as Exhibit E from the administrator of Women's Clinic, P.C. notes the potential loss of Dr. Thurmond's expertise to her nine-physician practice group and the loss of superior service for on-the-spot treatment such as cyst aspirations.

49.  Many Portland area women insured by Providence health plans or rented provider panels undergo their annual mammogram examinations at the plaintiff firms.  These doctor/patient relationships will be disrupted in the event the May 1 exclusion of the plaintiff firms from Providence-controlled insurance plans is allowed to go into effect on May 1.

50.  In a letter dated March 15, 2005 attached as Exhibit F, Dr. Leigh Anne Dew notes that EPIC Imaging-East has "the best available technology for producing and interpreting head and neck radiological examinations."  She notes that, in her otolaryngology practice, "their expertise has been critical to diagnosing unusual presentations of disease."  She also states that the exclusion of EPIC Imaging-East from the Providence Defendants' provider list, "will adversely affect the care of my patients who have Providence insurance plans" and that its physicians provide a level of patient care "currently not available at other centers in Portland."

51.  In a letter dated February 5, 2005 attached as Exhibit G, Dr. Patrick Y. Lee, a surgeon with The Colon & Rectal Clinic notes that the services of EPIC Imaging-East have been:

Page 22 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

> very important in the development of the
> cystodefecography studies which I currently
> use for patients with pelvic floor prolapse,
> fecal incontinence, constipation and
> defecation disorders.

Dr. Lee goes on to note in his letter that, while Providence can preform routine CT scans and PET scans, "it is unable to provide all the services that specialty groups like myself use."

52.    In addition to reduced diagnostic choice for Portland area doctors and negative impacts on patient care, the costs for radiology and imaging services in Portland will rise at a faster rate than would occur if the plaintiff imaging firms have the opportunity to compete for the imaging referrals of patients who are covered by Providence insurance plans or rented Providence provider panels.    The immediate impact on price of the illegal combination of the Providence and Co-Conspirator defendants is demonstrated by the large increase in the conversion factor for radiology and imaging services announced by the Providence Defendants, which will become effective, not coincidentally, on the very date that plaintiffs' exclusion from the Providence-controlled insurance plans becomes effective.

53.    At present, Providence charges dramatically different rates for radiology and imaging services depending upon whether the patient is insured or not, whereas the plaintiff firms charge uniform rates to insured and uninsured customers.

54.    In connection with all of the radiology and imaging services provided by plaintiffs, which include MRI, CT and PET scanning, mammography, ultrasound and x-rays, the prices charged to insured patients are exactly the same as those charges for

Page 23 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

which Providence receives payment pursuant to an insurance plan.
However, as to uninsured patients, the prices charged by the
plaintiff firms are without exception either comparable to or
substantially below those of Providence.  For example, the prices
charged by EPIC Imaging-East and Body Imaging for a CT CAP (chest,
abdomen, and pelvis) scan are $1,930 and $2,244 respectively.  At
Providence Portland Medical Center and Providence St. Vincent
Medical Center, the charge for a CT CAP scan is more than double
that of either of the plaintiff firms at $4,494.

        55.  The purpose of the Sherman Act is to preserve and
advance the American system of free enterprise by encouraging, to
the fullest extent possible, free and open competition in the
marketplace, and by preventing unreasonable restraint or
monopolization of any business or industry, so that the consuming
public may receive better goods and services at lower cost.  These
goals of free competition and better service are especially
critical in a medical context where individual health and safety
are always at issue.  Unless the exclusionary and predatory
practices of the Providence defendants described above are
promptly enjoined, competition in the Portland market for
radiology and imaging services will be hurt, both physician and
patient choice in connection with important diagnostic tools will
be undermined and the reduced competition will inevitably cause
prices to rise to the detriment of health care consumers.

: : :

: : :

Page 24 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

## FIRST CLAIM FOR RELIEF

### Federal Claim - Restraint of Trade

### (Against All Defendants)

56.    Plaintiffs reallege paragraphs 1 through 55.

57.    The Providence defendants and the Co-Conspirator defendants have entered into exclusive dealing arrangements under which the defendants have agreed collectively to refer significant volumes of radiology and imaging services on an exclusive basis to the joint venture centers being established on the east side of Portland in April, 2005 and on the west side in August, 2005.

58.    Where, as here, this combination seeks to advance the Providence defendants' objective to monopolize the Portland market for radiology and imaging services, it constitutes a restraint of trade in violation of Section 1 of the Sherman Act.

59.    If this illegal exclusive dealing arrangement involving all defendants in this action is not enjoined prior to May 1, 2005, plaintiffs will suffer combined damages on a monthly basis of $1 million, which are to be trebled under the federal antitrust laws to $3 million per month.

## SECOND CLAIM FOR RELIEF

### Federal Claim - Illegal Tying

### (Against Providence Defendants)

60.    Plaintiffs reallege paragraphs 1 through 55.

61.    Providence and its captive insurance division are illegally coercing more than 100 insurance companies in the Portland area into purchasing the Providence defendants' full complement of inpatient acute care hospital services and

Page 25 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

outpatient services including radiology and imaging by tying the price of its acute care hospital services to the purchase of radiology and imaging services from Providence-controlled or contracted providers.

62.   As a result of this illegal tying arrangement, a substantial part of the Portland market for radiology and imaging services has been affected and competition has been suppressed.

63.   The use of this illegal tying arrangement by the Providence defendants has caused Body Imaging damages of approximately $1 million to date and will cause both plaintiffs, unless enjoined, combined damages on a monthly basis of $1 million, which are to be trebled under the federal antitrust laws to $3 million per month.

<u>**THIRD CLAIM FOR RELIEF**</u>

**Federal Claim – Attempted Monopolization**

**(Against Providence Defendants)**

64.   Plaintiffs reallege paragraphs 1 through 55.

65.   The Providence defendants are deliberately pursuing a business plan calculated to consolidate and monopolize the Portland market for radiology and imaging services.

66.   The Providence defendants have engaged in the predatory and anticompetitive conduct alleged above with the specific intent of obtaining monopoly power in the relevant market and of excluding competitors from that market, including plaintiffs.

67.   The Providence defendants are dangerously close to obtaining monopoly market power in the Portland market for

Page 26 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

outpatient radiology and imaging services due to their existing market share, high barriers to entry and their exclusionary contracting practices.

68.    As a result of the Providence defendants' illegal attempt to monopolize the Portland market for outpatient radiology and imaging services, Body Imaging has already suffered damages in the amount of $1 million to date, which are to be trebled under the federal antitrust laws to $3 million.  Further, in the event injunctive relief is not granted to maintain the competitive status quo and to allow plaintiffs' continued access to the Providence-controlled share of the radiology and imaging market in Portland, plaintiffs will suffer combined damages on a monthly basis of $1 million, which are to be trebled under the federal antitrust laws to $3 million per month.

### FOURTH CLAIM FOR RELIEF

### Federal Claim – Conspiracy to Monopolize

### (Against All Defendants)

69.    Plaintiffs reallege paragraphs 1 through 55.

70.    In furtherance of the Providence defendants willful intention to acquire and maintain market (and ultimately monopoly) power, the Providence defendants have acted in concert with the Co-Conspirator defendants with the intent of suppressing, inhibiting and destroying competition in the Portland market for outpatient radiology and imaging services.

71.    The Providence and Co-Conspirator defendants have knowingly and willingly engaged in a pattern of predatory and anticompetitive conduct, including the exclusion of plaintiffs

Page 27 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

from Providence preferred provider panels, the exclusive dealing arrangements between the Providence and Co-Conspirator defendants and the planned acquisition of additional inpatient and outpatient imaging facilities in the Portland market, all with the purpose of acquiring and maintaining market power in the relevant market.

72.  The Providence defendants have acquired and maintained significant market power in the Portland market for outpatient radiology and imaging services and there is a dangerous probability that, unless enjoined, they will succeed in achieving monopoly power in that market.

73.  As a result of the Providence defendants' illegal attempt at monopolization of the Portland market for outpatient radiology and imaging services, Body Imaging has already suffered damages in the amount of $1 million, which are to be trebled under the federal antitrust laws to $3 million.  Further, in the event injunctive relief is not granted to maintain the competitive status quo and to allow plaintiffs continued access to the Providence-controlled share of the radiology and imaging market in Portland, plaintiffs will suffer combined damages on a monthly basis of $1 million, which are to be trebled under the federal antitrust laws to $3 million per month.

:  :  :

:  :  :

:  :  :

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

## FIFTH CLAIM FOR RELIEF

### Federal Claim – Exclusion from Essential Facility

### (Against Providence Defendants)

74.  Plaintiffs reallege paragraphs 1 through 55.

75.  The Providence defendants operate three Portland area hospitals including the two largest.  These acute care facilities represent a significant portion of the acute care market in Portland and constitute "essential facilities" that physicians must have reasonable access to in order to care for their patients who are admitted to Providence hospitals.

76.  As the operator of essential hospital facilities in Portland, Providence must provide physicians with privileges at Providence hospitals reasonable access to technologies that facilitate speedy access to electronic medical records.  This must necessarily include access to the digital medical records maintained by the plaintiff imaging firms for patients who are admitted to Providence hospital facilities.

77.  There is no reasonable business justification for the actions by Providence to prevent electronic linkage between the plaintiff imaging firms and Providence hospital and outpatient facilities.  This Court should promptly issue appropriate mandatory injunctions requiring Providence to allow the electronic links between Providence facilities and the plaintiff imaging firms, which only serve to facilitate efficient and effective patient care.

:  :  :

:  :  :

Page 29 – **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

## SIXTH CLAIM FOR RELIEF

### State Claim – Intentional Interference with Prospective Economic Advantage

### (Against Providence Defendants)

78.   Plaintiffs reallege paragraphs 1 through 55.

79.   The Providence defendants have intentionally interfered with plaintiffs' economic relationship with commercial health insurance providers serving the Portland market and with referring physicians and patient/consumers of radiology and imaging services in the same market.  The interference by the Providence Defendants was done with wrongful intent and was accomplished by improper means.

80.   The Providence defendants intended by their interference to acquire and maintain market power in the relevant market, to attempt to acquire and maintain market power in the relevant market and to restrain trade unreasonably.

81.   The Providence defendants' conduct was willful and wanton, violative of societal interests beyond the limits of social tolerance, and of a type that can be deterred by the award of punitive damages.  The proper amount of punitive damages is $10 million.

WHEREFORE, plaintiffs pray for judgment as follows:

1.   On their federal antitrust claims against the Providence defendants in connection with their second, third and fifth claims, for treble damages in the amount of $39 million during the likely period of one year that this action will be pending before trial;

Page 30 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

2.    On their federal antitrust claims against both the Providence and Co-Conspirator defendants in connection with their first and fourth claims for relief, for treble damages in the amount of $39 million during the likely period of one year that this action will be pending before trial;

3.    On their state law claim against the Providence defendants in connection with their sixth claim, for compensatory damages in the amount of $13 million and punitive damages in the amount of $10 million;

4.    For appropriate preliminary and permanent injunctive relief; and

5.    For an award of their reasonable attorneys fees and costs incurred herein.

DATED this _____ 4th _____ day of April, 2005.

HAGLUND, KELLEY, HORNGREN,
JONES & WILDER LLP

By: _____
Michael E. Haglund, OSB No. 77203
Michael K. Kelley, OSB No. 85378
Michael G. Neff, OSB No. 92536
Julie A. Weis, OSB No. 97432
Telephone: (503) 225-0777
Attorneys for Plaintiffs

Plaintiffs demand a trial by jury in this action.

HAGLUND, KELLEY, HORNGREN,
JONES & WILDER LLP

By: _____
Michael E. Haglund, OSB No. 77203
Michael K. Kelley, OSB No. 85378
Michael G. Neff, OSB No. 92536
Julie A. Weis, OSB No. 97432
Telephone: (503) 225-0777
Attorneys for Plaintiffs

Page 31 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd

## <u>VERIFICATION</u>

The undersigned have reviewed the factual allegations contained in the foregoing Complaint and verify that these allegations are true and accurate to the best of their knowledge.

_____
Gerald L. Warnock, M.D.

_____
Paul A. Meunier, M.D.

Page 32 - **COMPLAINT**

HAGLUND KELLEY HORNGREN & JONES LLP
ATTORNEYS AT LAW
ONE MAIN PLACE
101 SW MAIN STREET, SUITE 1800
PORTLAND, OREGON 97204-3226

F:\MEH\c14669.wpd



Providence | Health Plans

P.O.Box 4327
Portland, Oregon 97208-4327

February 1, 2005

Gerald Warnock, President
East Portland Imaging Center
233 N.E. 102nd
Portland, OR 97220

Re:     PHP EPO Medical Services Agreement, 1/4/01
        PHP 2001 Medical Services Agreement 11/21/00
        Providence Preferred 2001 Medical Services Agreement 11/21/00

Dear Dr. Warnock:

Effective May 1, 2005, Providence Health Plans (PHP) and Providence Preferred (PPO) are
terminating all agreements for all lines of business (EPO, Commercial, Medicare, Medicaid,
PPO) with East Portland Imaging Center and the practitioners who work for East Portland
Imaging Center. You may consider this letter to be notice of termination without cause under
each of those contracts.

This was not an easy decision for us to make, nor was it made in a hasty fashion. East Portland
Imaging Center has provided excellent patient care over the years and we have valued our
business relationship with EPIC. Now that Providence Health System's own imaging facilities
have expanded and can more than adequately handle patient capacity throughout the Portland
area, we have determined that it is in the best interest of our customers to consolidate these
services in Portland through the PHS facilities. As health care costs continue to escalate,
consolidation of imaging services is one means by which to achieve affordability and efficiencies
for our patients into the future.

Thank you for the services that you have provided over the years to PHP members and PPO
eligible participants. We have greatly appreciated your services.

If you have questions regarding these contract terminations, please feel free to contact me at 503-
574-6370.

Sincerely,

Phil Jackson
Regional Director of Network Development
Providence Health Plans

EXHIBIT   A
PAGE   1

FROM BODY IMAGING RADIOLOGY    3-619-1101    (TUE)MAR 15 2005 14:04/ST. 14:00/No. 6815095930 P  2



P.O Box 4327
Portland, Oregon 97208-4327

February 23, 2005

**RE: PROVIDENCE PREFERRED FEE SCHEDULE**

Dear Providence Preferred Provider:

The enclosed Providence Preferred contract Attachment A is your new reimbursement for Providence Preferred effective **May 1, 2005.** These rates will be reported to Providence Preferred Payors prior to the effective date to ensure that they are loaded in a timely manner.

In February of last year, Providence Preferred advised you of changes to the fee schedule methodology which would be implemented in 2005. Those changes are as follows:

- The place of service component of the CMS Relative Value Scale will now be used. Allowables will be calculated using either facility or non-facility RVUs, based on where the service is performed.
- Immunizations and drugs (HCPCS J, and some Q and S, codes) allowables will be based on a percent of the Medicare average sales price (ASP). Where no ASP is available, a percent of the Wholesale Acquisition Cost (WAC) will be used.
- HCPCS code allowables will be based on the Medicare DMERC fee schedule or, for codes not included in DMERC, may be priced comparable to RBRVS.
- The Providence Preferred Select case manager rate has been discontinued.

We appreciate your participation on our panel. Thanks to practitioners like you, Providence Preferred is the largest PPO in the state of Oregon and Southwest Washington. We look forward to our continued mutual success.

If you have any questions about Providence Preferred, please feel free to contact your Provider Relations Representative.

Sincerely,

Phil Jackson
Regional Director/Network Development
Providence Health Plans
(503) 574-6370

Enc

EXHIBIT  _B_
PAGE  _1_

### PROVIDENCE PREFERRED
### PARTICIPATING PRACTITIONER/PROVIDER AGREEMENT RATES

**ATTACHMENT A**
**Rate Effective Date: May 1, 2005**

Fee Schedule 01
### OREGON COUNTIES: CLACKAMAS, COLUMBIA, CLATSOP, DOUGLAS, GILLIAM, HOOD RIVER, JOSEPHINE, MULTNOMAH, SHERMAN, TILLAMOOK, UMATILLA, WASCO, WASHINGTON, YAMHILL
### WASHINGTON COUNTIES: CLARK, COWLITZ, KLICKITAT, SKAMANIA, WAHKIAKUM

The Providence Preferred fee schedule is based upon the CMS Relative Value Scale of RBRVS (Resource Based Relative Value Scale) available as of December 31, 2004. Based on place of service, the facility or non-facility Relative Value Units (RVUs) will be used. The RVUs will not be geographically adjusted.

For anesthesia services, the most current American Society of Anesthesiologists (ASA) methodology will be used for standard American Medical Association (AMA) defined CPT codes in the range 00100 through 01999.

For laboratory services, the fee schedule is based on a percentage of the Medicare Clinical Diagnostic Laboratory Fee Schedule for Oregon, available as of December 31, 2004.

| CPT Codes | Relative Value Scale | Conversion Factor | Allowable |
|---|---|---|---|
| 90000 - 99999 | RBRVS | $62.00 | |
| 90471 - 90474 (exception) | | | $10.00 |
| 10000 - 69999 | RBRVS | $62.00 | |
| 70000 - 79999 | RBRVS | $62.00 | |
| 80000 - 89999 | RBRVS or | $62.00 | |
| "          " | Medicare Lab | 144% | |
| 00100 - 01999 | ASA/Anesthesia[1] | $46.25 | |

[1]ASA time units based on 15 minute time intervals.

For immunizations, HCPCS "J" series codes 0000-9999, and those HCPCS "Q" and "S" temporary codes which are for drugs, the fee schedule is based on one hundred fifteen percent (115%) of the Medicare allowed, based on Medicare average sales price (ASP), available as of December 31, 2004. Providence Preferred will not implement Medicare quarterly updates. In the event there is no Medicare ASP, reimbursement will be based on one hundred fifteen percent (115%) of the Wholesale Acquisition Cost (WAC).

For HCPCS included in the Medicare DMERC fee schedule, pricing will be at one hundred five percent (105%) of the Medicare DMERC schedule available as of December 31, 2004. HCPCS codes not encompassed by other fee schedules may be priced comparable to RBRVS.

The most current code sets will be recognized by Providence Preferred in accordance with HIPAA regulations.

The Providence Preferred allowance for codes not listed in the reimbursement schedule, including new codes, will be at 80% of billed charges.

**Reimbursement is subject to billed charges or the negotiated rate, whichever is less.**

Providence Preferred may from time to time revise, amend, modify or supplement this reimbursement schedule. In that event, Providence Preferred will give notice by regular mail thirty (30) days in advance of the revisions, amendment, modification or supplement. Submission to Providence Preferred of a billing for health services for dates of service after the effective date of the new reimbursement schedule constitutes acceptance by the health care provider of the new schedule.

Optometrists are priced at 85% of the reimbursement schedule described above.

A four tiered reimbursement schedule for Behavioral Health and an Alternative Care fee schedule are reported separately.

Providence Preferred does not set allowances for prescription medications or eyewear. Client payment should be based on billed charges for these services.

Open heart surgical services provided at Providence Hospitals in Portland include both hospital and physician rates and are reported on a separate schedule.

EXHIBIT ___*B*___
PAGE ___*2*___

05-01-05 PPO Fee Schedule 01
T:\Provider Contracting\Contract\PPO\2005 Payor Report\Practitioner\Fee 01--05-01-05--PDX Metro etc

pdx metro, coast, SROH, umatilla, douglas, josephine
02/17/05  clg



4805 Northeast Glisan
Street
Portland, Oregon
97213-2967

Tel  503.215.1111

November 28, 2000

PPMC Physicians
4805 NE Glisan
Portland, OR 97213

**RE: Radiology Interviews**

Dear Physician,

I am writing you in follow-up for the evaluation that was done regarding the Radiology Department, and I thank you for your participation in that evaluation. I realize that time is the most valuable commodity that we have, and I appreciate your willingness to share that time to provide input to the medical staff as to the overall perceptions and functioning of the Radiology Department. There were several areas that stood out as major sources of dissatisfaction to the Medical Staff. These were:

- The concept of service.
- There appears to be a wide-spread  perception of variability of quality of the radiologists and their competency to interpret exams.
- There is a significant issue in terms of convenience in attempting to find films and to be able to access radiologists.
- Physicians who do not have ready access or are not facile with the computer are having problems accessing reports.

Everybody perceives that the Radiology Department at Providence Portland is at a disadvantage having to compete against the "gold standard" in the community – East Portland Imaging. We would hope that in time the Radiology Department here at Providence Portland Medical Center becomes the "gold standard" in the community.

I thank you for your participation in that effort to improve the overall function of the department. If I can be of further assistance, please feel free to contact me.

Sincerely,

Kim Wayson, MD, President
Professional Staff

KW:tms

EXHIBIT _C_

PAGE _1_

# MT HOOD GENERAL AND VASCULAR SURGEONS

| | | |
|---|---|---|
| **Medical Office Building One** | **Shaghayegh Aliabadi-Wahle, MD** | **Providence Professional Plaza** |
| 24900 SE Stark, #208 | **Kenneth A. Janoff, MD, FACS** | 5050 NE Hoyt, #411 |
| Gresham, Oregon 97030 | **Patrick M. Lehti, MD, FACS** | Portland, Oregon 97213 |
| Telephone 503-661-4526 | | Telephone 503-239-4324 |
| Fax 503-666-3434 | | Fax 503-239-5572 |

*February 7, 2005*


*Phil Jackson*
*Regional Director of Network Development*
*Providence Health Plan*


*Dear Mr. Jackson:*

*I'm writing you this letter in response to the letter I received dated 02-04-05, in regard to the termination of agreements with East Portland Imaging Center and the Providence Health Plan. I am very concerned about your decision and would hope that you would at least give some consideration to the fact, at least in my practice, we've had numerous problems trying to get the proper studies done at the Providence Hospital facilities. As you probably know, my practice is limited to vascular surgery, and we've been doing a lot of CT angiograms as well as MRA's. We've been using the CT angiograms to evaluate patients for abdominal aortic aneurysm repair, specifically for endovascular repair and for the follow up of the endovascular grafts. I tried very hard to work with the Providence Hospital system in getting these tests done appropriately and in a timely fashion. I worked specifically with Jim Waskey and Stacy Yamasaki on trying to develop protocols to get the proper studies to evaluate patients for these grafts. Over and over again the studies were not being performed correctly and I would talk to Stacy or Jim Waskey, and Jim finally told me that I should have the studies done at EPIC because his people couldn't seem to get these studies done properly. When the studies aren't done properly and have to be redone there's great risk to the patient because they involve a lot of contrast which can be nephrotoxic as well as the wasted time and energy, and often times transportation can be a problem with these elderly patients.*

EXHIBIT    O
PAGE    /

-2-

*We have had multiple problems with the radiology department at Providence in terms of getting films to the office and to surgery, as well as getting the proper studies done, and we even found one time when an MRA was improperly done, the tech tried to hide this from the radiologist and we later found it and discovered what had happened. I've never had any problem with EPIC getting these studies done properly. I went over the same protocol with Jerry Warnock, and we have yet to not have a study done properly at EPIC. Obviously, Jim Waskey understood the situation and gave me the appropriate advice.*

*I'd be happy to discuss this in more detail with you if you'd like, but I realize there are financial implications to the system. On the other hand, I think you should give some consideration to quality and service that has been unsurpassed by the people at EPIC.*

*Thank you for your consideration in this matter.*

*With best wishes.*

*Sincerely,*

*Kenneth A. Janoff, M.D., F.A.C.S.*

*KAJ:klp*

*cc:  Dr. Jerry Warnock*

*WP/FILES/JANOFF5*

EXHIBIT ___D___

PAGE ___2___



**Women's** Comprehensive Care in Obstetrics & Gynecology - *Physicians & Surgeons*
**Clinic, P.C.** Thomas O. Flath, M.D. - Richard N. Hamilton, M.D. - Sidney J. Prescott, Jr., M.D. - Duncan R. Neilson, Jr., M.D.
Peter H.R. Roberts, M.D. - Jaime E. Kean, M.D. - Amy Z. Schmitke, M.D. - James E. Stempel, M.D. - Lisa K. Johnson, M.D.

March 3, 2005

Phil Jackson
Regional Director of Network Development
Providence Health Plans
PO Box 4327
Portland, Oregon   97208-4327

Dear Mr. Jackson:

The physicians at Women's Clinic, PC were very unhappy to read your letter informing us that Providence has terminated your agreements for all lines of business with Body Imaging and East Portland Imaging Center.  Our physicians have referred patients to these  for years and have been very pleased with their customer service and the quality of their imaging.

Our physicians feel EPIC can always fit patients with breast lumps into the schedule the same day.  EPIC also provides treatment on-the-spot for things like cyst aspirations.  We are also concerned that it will be a problem to get films for comparison mammograms and bone density tests.  Providence will have to order the films, it will take longer and we are afraid we will have anxious patients.  We also have great trust in the work of Dr. Amy Thurmond, one of the country's premiere gyn radiologists.  If we can no longer send our patients to EPIC, we will no longer have her expertise available to us.

We understand these imaging services compete with those same services provided by the Providence system.  Unfortunately your business decision to eliminate these as providers for the Providence Health Plans greatly affects our clinical work and the care our physicians provide to our patients.

We hope you will reconsider your decision given the upset and dissatisfaction it has caused with local physicians.

Yours truly,

*Marilyn Happold-Latham*

Marilyn Happold-Latham, MBA, FACMPE
Administrator

cc: EPIC Imaging
    Body Imaging

EXHIBIT    E
PAGE       1



501 N. Graham, Suite 525          5050 N.E. Hoyt St., Suite 359
Portland, OR 97227                Portland, OR 97213

phone: 503-249-5454     www.womens-clinic.yourmd.com     fax: 503-249-5498



COLUMBIA GORGE E.N.T.
AND ALLERGY

March 15, 2005

Phil Jackson
Providence Health Systems
Murray Business Center
3601 S.W. Murray Blvd., Suite #10
Beaverton, OR 97005

Dear Mr. Jackson:

This letter is to encourage you to keep Epic Imaging Center on your provider list. I have utilized the resources at Epic Imaging extensively in my otolaryngology practice. I have found that the exams performed at Epic are of the highest quality available in the Portland area. In addition, the physicians at Epic have been very proactive in developing the best available technology for producing and interpreting head and neck radiological examinations. These physicians are also available to read films which have been performed in other facilities, and their expertise has been critical in diagnosing unusual presentations of disease, or in identifying anatomical abnormalities which show up on the images.

I feel very strongly that removing Epic Imaging from your provider list will adversely affect the care of my patients who have Providence insurance plans. The service provided by the Epic physicians positively impact the level of patient care which is currently not available at other centers in Portland.

Thank you for your time and attention to this matter. Please do not hesitate to contact me if I can be of any further assistance.

Sincerely,

Leigh Anne Dew, MD

LD/na
cc: Gerald Warnock, MD
    Epic Imaging
    233 NE 102nd Avenue
    Portland, OR 97220

LEIGH ANNE DEW M.D.
BOARD CERTIFIED OTOLARYNGOLOGIST

EXHIBIT ___F___
PAGE ___/___

1790 MAY ST • HOOD RIVER, OR 97031 PHONE: 541.386.5119 FAX 541.298.7746
1815 E 19TH, STE 1 • THE DALLES, OR 97058 PHONE: 541.298.5563 FAX 541.298.7746

# THE COLON & RECTAL CLINIC
## SURGICAL SPECIALTY GROUP, P.C.

**EUGENE S. SULLIVAN, M.D.**
**GARY H. LEAVERTON, M.D. • ROY E. BREEN, M.D.**
**PATRICK Y. LEE, M.D. • SCOTT M. BROWNING, M.D. • REHAN S. AHMAD, M.D.**

**SURGEONS**
**511 S.W. 10TH AVENUE, SUITE 714**
**PORTLAND, OREGON 97205**
**(503) 222-1615**

February 5, 2005

Mr. Phil Jackson
Regional Director of Network Development
Providence Health Plans
PO Box 4327
Portland, Oregon  97208-4327

Dear Mr. Jackson:

I am in receipt of your letter dated February 4, 2005
regarding termination of the services from East Portland
Imaging Center. They have been very important in the develop-
ment of the cystodefecography studies which I currently use
for patients with pelvic floor prolapse, fecal incontinence,
constipation and defecation disorders. Although your insti-
tution can accommodate the routine CT scans and PET scans,
it is unable to provide all the services that specialty
groups like myself use. The East Portland Imaging Center
plays a very pivotal role in the development of specialty
types of imaging such as the cystodefecography. I will
ask that you provide some means of allowing us to refer
some of the patients on the Providence Health Plan and
Providence Preferred contracts to go to East Portland
Imaging for these particular types of specialty studies.

Please do not hesitate to call me if you have any
questions.

Best regards.

Sincerely,


Patrick Y. Lee, M.D.

PYL:s
c.c. Daniel Kocarnik, M.D., EPIC

EXHIBIT  *G*
PAGE  *1*